IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Brandy Nicole Stokes, ) | |
| ) | C/A No. 2:05-CV-02970-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER and OPINION** |
| ) | |
| Charleston County School District and ) | |
| Wanda Marshall, in her individual capacity, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

   This matter is before the court on plaintiff's objections to the magistrate judge's report and recommendations. In considering defendants' motion for summary judgment, Magistrate Judge George C. Kosko recommended granting summary judgment to defendants on each of plaintiff's claims. For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

## I.  BACKGROUND

   Plaintiff is a white female. She attended college at the University of Maine, where she received a bachelor's degree with a major in elementary education and minor in English. Plaintiff suffered health problems while in college and was unable to complete student teaching, but was allowed to substitute the student-teaching requirement with an alternative class. Thus, she was able to complete her degree without going through the in-class requirements of student teaching.

   Because she did not complete student teaching while in college, plaintiff was not eligible to obtain a professional teaching certificate. Upon moving to South Carolina, she received a conditional teaching certificate from the South Carolina Department of

Education. The statute authorizing conditional teaching certificates permits a school board to renew the certificates annually for up to three years, so long as the "holder of the certificate shows satisfactory progress toward completion of the teacher certification program prescribed by the board." S.C. Code Ann. § 59-26-30(A)(8). The statutory scheme expects teachers with conditional certificates to complete the program necessary to obtain full certification within three years.

Plaintiff applied for and received a position at Brentwood Middle School. She was interviewed by defendant Wanda Marshall, the school's principal, and Reginald Bright, the school's assistant principal. Brentwood Middle School is in the Charleston County School District. Its student population is made up primarily of African-American children from lower socio-economic backgrounds.

Upon reporting for work, plaintiff alleges she was provided an employee handbook that contained a "zero tolerance" policy towards racial harassment and violence. (Pl. Ex. 1 at ¶¶ 25-28.) Plaintiff alleges she "started receiving racist slurs and outright insubordinate behavior from African American children . . . within the first week of classes." (Pl. Ex. 1 at ¶ 36.) Typical slurs, according to plaintiff, were "Cracker, Honkey, White Bitch, and Mother Fucking White Bitch." (Pl. Ex. 1 at ¶ 37.) Plaintiff states she reported the racial slurs to others in her teaching group "on several occasions," but that they were limited in their ability to react. (Pl. Ex. 1 at ¶ 37.)

Plaintiff also alleges she reported the racial harassment directly to Marshall. Plaintiff states, "I went to her in the first week and a half of school. I reported to her that students were calling me cracker, honkey, white bitch and mother fucking white bitch. I reported that student had called me a cracker bitch and that said that he would kick my

cracker ass." (Pl. Ex. 1 ¶ 51.)

Plaintiff also cites to specific incidents of racial hostility and violence that she reported to Marshall, but Marshall—according to plaintiff—failed to do anything about them. First, plaintiff alleges an African-American student went to her classroom when plaintiff was alone, told plaintiff that he would "rape and kill" her before the administration arrived, and approached her while singing a song about "raping a white bitch." (Pl. Ex. 1 at ¶52.)  Plaintiff asserts she immediately left the classroom and reported the incident to Marshall, who took no action. (Pl. Ex. 1 at ¶ 53.) Second, plaintiff alleges a group of African-American students drew a picture of a white child being hanged by a group of black children with the caption "Die Whitey Die!" (Pl. Ex. 1 at ¶ 57.) Plaintiff alleges she took the drawing to Marshall, who took no action. (Pl. Ex. 1 at ¶ 57.)

In one last incident, plaintiff was physically assaulted by a student, causing her head to hit a desk and chipping one of her teeth. (Pl. Ex. 1 at ¶ 61.) Marshall suspended the student for two days. (Pl. Ex. 1 at ¶ 68.) Plaintiff then alleges she either called or e-mailed every member of the CCSD school board, six of whom she actually spoke with, and reported the racially hostile environment, as well as her personal experiences, to them. (Pl. Ex. 1 at ¶ 69.) She also called the superintendent but received no response. (Pl. Ex. 1 at ¶ 69.)

On November 20, 2002, she was taken out of work by a doctor due to injuries she sustained in the physical assault. (Pl. Ex. 1 at ¶ 75.) Upon being released to go back to work in February 2003, she contacted Marshall who told her not to return to Brentwood and informed plaintiff that her teaching contract would not be renewed. (Pl. Ex. 1 at ¶

81.)

Plaintiff thereafter filed this action, alleging defendants' actions violated § 1981, § 1983, 28 U.S.C. § 2000d, and asserting a claim for breach of contract. Defendants moved for summary judgment, which the magistrate judge recommended be granted.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's Report to which a specific, written objection is made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140 (1985).  This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected.  See id. at 149-50.  A party's general objections are not sufficient to challenge a magistrate judge's findings.  Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  This court may accept, reject, or modify the Report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration.  28 U.S.C. § 636 (b)(1).

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of

evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a mere "scintilla" of evidence will not preclude summary judgment. Id. at 252. The court's inquiry is "not whether there is literally no evidence, but whether there is any [evidence] upon which a jury could properly . . . find a verdict for the party" opposing summary judgment. Id. at 251.

### III.  DISCUSSION

**A.     Section 1981**

When a plaintiff asserts claims against a state actor of violation of federal law, § 1983 provides the exclusive remedy—even when the plaintiff alleges violation of rights guaranteed by § 1981. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989). The Fourth Circuit has held the Civil Rights Act of 1991 did not overturn the Supreme Court's interpretation of § 1981. See id. at 156 n.1; Burns v. Bd. of County Comm'rs of Jackson County, 330 F.3d 1275, 1288 (10th Cir. 2003 n.10). Accordingly, defendants are entitled to summary judgment on plaintiff's § 1981 cause of action.

**B.     Requirement of a Municipal Policy or Custom in § 1983 Suits**

The Supreme Court held in Monell v. Department of Social Services, 436 U.S. 658 (1978), that a municipality cannot be held be liable under § 1983 based on a respondeat superior theory. Monell, 436 U.S. at 691. Rather, a municipality may be liable

under § 1983 only for its own unconstitutional or illegal policies and customs. Id. at 694. The Court held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Id. The Court subsequently extended Monell's holding to suits brought under § 1981. See Jett, 491 U.S. at 735-36. A school board is considered a "municipality" as the Court used that term in Monell. See Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522-24, 522 n.3 (4th Cir. 2000).

A necessary determination in applying Monell is whether the municipality has a "custom or policy" that violates § 1983. The prototypical example of official policy are the acts of the municipality's legislative body. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Thus, an act of the Charleston County School Board would establish an official policy of the school district. Individuals can also create official policy if that individual "possesses final authority to establish municipal policy with respect to the action ordered." Id. at 483. Whether an individual is a policymaker is determined by looking to state law, local law, and "'custom and usage' having the force of law." Jett, 491 U.S. at 737 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 124 n.1 (1988)); see Riddick, 238 F.3d at 524. That determination is a question of law. Jett, 491 U.S. at 737.

**C.    Section 1983 Claim for Failing to Renew Plaintiff's Contract**

In this case, the first question is whether an official policy or custom of defendant caused plaintiff's teaching contract to not be renewed. Under South Carolina law, the

school board "is the final policymaker with regard to the employment and discharge of teachers." Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 196 (4th Cir. 1994) (citing S.C. Code Ann. § 59-19-90(2)). Because only final policymakers can create official custom or policy on behalf of the entity, id. at 195, the school district would be liable for Marshall's action only if it knew of her improper conduct and ratified it in some way. See id. at 196.

Plaintiff here has not presented any evidence that the school board itself acted on account of plaintiff's race. Additionally, there is no evidence that the school board knew of any discriminatory motive held by Marshall in recommending termination. The affidavit submitted by plaintiff in opposition to summary judgment states only that she told members of the school board about the allegedly racially hostile atmosphere at Brentwood—the affidavit does not say anything about whether the school board knew Marshall had, as plaintiff alleged, recommended termination based on plaintiff's race.

Indeed, plaintiff has not even demonstrated a genuine issue as to whether Marshall discriminated against plaintiff on the basis of race. Plaintiff's affidavit states only that Marshall, following an attack on plaintiff by an African-American student, told plaintiff: "'here we go again, another white teacher trying to bring these kids down.'" (Pl. Ex. 1 ¶53.) Even drawing inferences in plaintiff's favor, nothing in that statement supports plaintiff's claim that Marshall recommended the contract not be renewed because she was white. Plaintiff also alleges in the affidavit that Marshall said she would "snowball" plaintiff's career. While that statement would indicate Marshall did not hold plaintiff in high esteem, there is no reason why that statement supports an inference that Marshall acted on account of plaintiff's race. Thus, there is no evidence that Marshall engaged in behavior that, even if approved and ratified by the school board, would

support the liability against either Marshall or CCSD for not renewing plaintiff's contract.

Assuming arguendo that plaintiff was terminated according to an official policy or custom, she has nonetheless failed to demonstrate the genuine issues necessary to make a prima facie case of discrimination. To the extent plaintiff alleges she was terminated based on race in violation § 1983, plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004); Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 133, 133 n.7 (4th Cir. 2002); Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998); Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994).

First, plaintiff has offered no evidence that her job performance was satisfactory. The records contains no deposition testimony, affidavits, or other evidence that anyone felt plaintiff performed satisfactorily during her time at Brentwood. Second, plaintiff has offered no evidence of disparate treatment. She has pointed to no other employees who were retained despite being in similar circumstances. The court is limited to evaluating the motion based on the evidence before it, and the evidence in the record here does not support plaintiff's § 1983 claims against CCSD and Marshall for failing to renew her teaching contract.

**D.     Section 1983 Claim for Racially Hostile Work Environment**

As an initial matter, plaintiff has met her burden to show a genuine issue as to whether a racially hostile work environment existed at Brentwood. "To demonstrate a

racially-hostile work environment, [the employee] must show that he was the subject of conduct that was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and that (4) there is some basis for imposing liability on the employer." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180 (4th Cir. 2004) (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001)).

First, plaintiff's affidavit demonstrates that plaintiff considered the students' conduct to be unwelcome. Second, plaintiff's affidavit provides numerous instances when she was subject to racial epithets made by students, and a jury could certainly conclude that such insults were "based on race." See Spriggs, 242 F.3d at 185; see also Shields v. Fed. Exp. Corp., 120 Fed. Appx. 956, 961 (4th Cir. 2005) (unpublished). Third, plaintiff's affidavit states that she subjectively found the environment to be hostile and a jury, based on the affidavit's many incidents of alleged hostility, could conclude that a reasonable person would similarly find the environment hostile or abusive. See Harris v. Forklift Sys, Inc., 510 U.S. 17, 21-22 (1993).

Finally, there is a basis for imputing liability to the employer. In Kandrac v. Charleston County School District, C/A No. 2:04-23318-DCN (D.S.C. Mar. 16, 2007), this court held a school district may, in some instances, be liable under Title VII for racially hostile environments created by their students. Id. at 26-30. at Because § 1983 and Title VII share employment discrimination standards, Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994); Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985), that rule applies in this case as well. As discussed in Kandrac, districts are not strictly liable for the conduct of their students. Rather, the employer is liable only if they:

(1) knew or should have known of the harassment and (2) failed to take immediate and appropriate corrective action. Kandrac, C/A No. 2:04-23318-DCN at 28. Thus, an employer is not liable if it did not know or had no reason to know of the harassment or it took appropriate corrective action, even if the action failed to eliminate the harassment. Id. In this case, plaintiff has demonstrated a genuine issue on both requirements.

Plaintiff's affidavit demonstrates that she informed the principal and members of the school board of the hostility she purportedly faced while at Brentwood. (Pl. Ex. 1 at ¶¶ 53, 69.) Plaintiff also states in her affidavit that Marshall and the school board failed to take corrective action. (Pl. Ex. 1 ¶¶ 53, 71.) Plaintiff has therefore demonstrated a genuine issue as to whether defendants suborned a racially hostile work environment. Because Marshall is not a municipal entity and was plaintiff's supervisor in charge of Brentwood, she may be liable for acting under color of state law in allowing a racially hostile work environment to exist. See 42 U.S.C. § 1983.

The next question is whether the racially hostile work environment was the result of an official policy or custom such that CCSD can be liable under § 1983. Although one typically thinks of an official policy or custom as an announcement made by a legislative body, policy can arise more informally. For policy or custom to arise from the "bottom-up," two requirements must be met: (1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers as a matter of specific intent or deliberate indifference to correct or terminate the improper custom and usage. Randall v. Prince George's County, 302 F.3d 188, 210 (4th Cir. 2002) (citing Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987)).

At this stage of the proceedings, plaintiff has adequately demonstrated that the allegedly racially hostile environment at Brentwood was the result of an official policy or custom. Plaintiff's affidavit demonstrates genuine issues as to both the relevant factual inquiries. First, plaintiff stated that she gave actual notice to Marshall and every member of the school board, (Pl. Ex. 1 at ¶¶ 53, 69), which is the ultimate policymaker for CCSD. Plaintiff stated that she actually spoke with six members. (Pl. Ex. 1 at ¶ 69.) Second, plaintiff alleged the school board failed to take any action to correct the situation. (Pl. Ex. ¶ 71). Drawing inferences in favor of plaintiff, one could conclude CCSD acted with deliberate indifference to the alleged ongoing violation of federal law at Brentwood.[1] Summary judgment is therefore inappropriate on the hostile work environment claim.

**E.     28 U.S.C. § 2000d**

§ 2000d does not provide a private right of action. Sumpter v. Harper, 683 F.2d 106, 108-09 (4th Cir. 1982). As the Fourth Circuit stated,

> Congress did not intend Title VI to establish a broad right of action for persons, who are aggrieved by the failure of some Federal program, to seek redress in the Federal courts. For those deficiencies, resort simply must be had to some other Federal legislation authorizing private enforcement or the general statutory and common law of the states.

Id. Defendants are therefore entitled to summary judgment on this cause of action as a matter of law.

**F.     Breach of Contract**

Plaintiff bases her breach of contract claim on two grounds. First, she alleges

---

[1] The court also notes that it Marshall could be the district's final policymaker with respect to in-school discipline and management. In that case, custom and policy created by Marshall would be imputed to CCSD for purposes of § 1983 liability. See Hall, 31 F.3d at 195 (citing Praprotnik, 485 U.S. at 123).

defendants breached the handbook book provided to her, which included a "zero tolerance" policy on race-based harassment. (Comp. ¶55.) Second, she alleges defendants breached the employment contract by terminating her in February 2005 without cause and based on her race. (Comp. ¶56.) The parties have not provided the purported handbook as part of the record. The court thus assumes <u>arguendo</u> that a handbook existed and validly altered plaintiff's employment.

On the alleged breach of the "zero-tolerance" policy, plaintiff has failed to demonstrate a genuine issue as whether that she suffered anything but non-pecuniary damages as a result of that purported breach. Notably, plaintiff does not allege in her affidavit that she was required to seek medical attention or otherwise lost income because of the harassment itself.[2] As a result, plaintiff objects to the magistrate judge's report and recommendation based only on the legal conclusion that non-pecuniary damages are not recoverable for breach of contract.

The general rule in South Carolina is that emotional distress damages are not recoverable in contract. <u>See</u> 11 S.C. Jur. <u>Damages</u> § 21 (2006) ("The general rule is that no matter how foreseeable the injury, e.g., financial loss due to breach of contract, damages for mental distress are usually not awarded in contract actions . . . ."); <u>see also</u> 24 Richard A. Lord, <u>Williston on Contracts</u> § 64:7 (4th ed. 2006) ("Mental suffering caused by a breach of contract, although it may be a real injury, is not generally considered as a basis for compensation in contractual actions."). This court has expressly held that emotional distress damages are never recoverable under South Carolina law for

---

[2]Other than injuries sustained in one attack, the damages for which were recovered and settled as part of plaintiff's worker's compensation claim against CCSD. (Pl. Ex. 1 at ¶¶ 75-77.)

breach of contract, "no matter what the intent of the breaching party was in failing to fulfill its obligations." Whitten v. Amer. Mut. Liability Ins. Co., 468 F. Supp. 470, 473 (D.S.C. 1977), aff'd 594 F.2d 860 (Table). The South Carolina courts have also not adopted the exception found in the Restatement (Second) of Contracts § 353, which provides that emotional distress damages are recoverable in contract when accompanied by bodily harm or a serious emotional disturbance. In the absence of South Carolina law recognizing plaintiff's ability to recover emotional distress damages in this case, the magistrate judge correctly recommended granting summary judgment on plaintiff's breach of contract claim.

As to plaintiff's claim that defendants breached her employment contract by terminating her based on race and without cause, summary judgment for defendants is also appropriate. As discussed above, plaintiff has failed to demonstrate a genuine issue that she was terminated on the basis of her race. Additionally, the uncontroverted evidence demonstrates that plaintiff was not "terminated" during the middle of the school year. (Def. Ex. 6 at ¶ 4, Ex. A.) Rather, the school district simply decided not to offer plaintiff another year-long contract. (Id.) Plaintiff has not demonstrated that she had a contractual right to another year-long position. The school district could choose, for any reason or no reason, not to renew a teacher's contract.

Accordingly, the magistrate judge correctly concluded that defendants are entitled to summary judgment on the breach of contract claim.

### IV.  CONCLUSION

For the above-stated reasons, it is hereby **ORDERED** that defendants' motion for summary judgment be **GRANTED** as to plaintiff's claims under §1981, for wrongful

termination under § 1983, 28 U.S.C. § 2000d, and for breach of contract. It is further **ORDERED** that defendants' motion be **DENIED** as to plaintiff's claim for racially hostile work environment under § 1983.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 16, 2007
Charleston, South Carolina**